809 So.2d 1017 (2001)
Lena Wallace Torres CARLIN
v.
David M. WALLACE
No. 2000 CA 2892.
Court of Appeal of Louisiana, First Circuit.
September 28, 2001.
*1019 John A. London, III, Baton Rouge, Counsel for PlaintiffAppelleeLena Wallace Torres Carlin.
Douglas T. Curet, Hammond, Counsel for DefendantAppellantDavid M. Wallace.
Before: FITZSIMMONS, WEIMER, and DOWNING, JJ.
FITZSIMMONS, J.
This appeal challenges two judgments by the trial court. We affirm in part, reverse in part, and vacate in part.
Appellant, David M. Wallace (Wallace), avers error on the part of the court as follows:
(1) the amendment of a final judgment, signed May 12, 2000, by a second judgment signed October 25, 2000, wherein the second judgment altered the substance of the May 12, 2000 final judgment in violation of La. C.C.P. art. 1951;
(2) the rendering of two judgments which do not accurately reflect the stipulations by the parties entered in open court;
(3) the rendering of a judgment that contradicted its previously issued reasons for judgment;
(4) the court's premise of its judgment on "vague, ambiguous, confusing, contradictory" language in the stipulation, and the failure to clearly set forth the stipulation's terms, such that it did not create a binding agreement;
(5) the award to appellee, Lena Wallace Torres Carlin (Carlin)[1] of a portion of Wallace's deferred retirement option plan (DROP); and
(6) the award to Carlin of $56,000.00 from DROP benefits.
Carlin responds by seeking damages on the basis of a frivolous appeal.

FACTS
We initially attempt to untangle the labyrinth of court pleadings and decrees with the following summarization. On October 4, 1989, a partial judgment declared Carlin the owner of a portion of the retirement benefits of her ex-husband, Wallace.[2] All other rights of the parties were reserved, including the issue of legal interest on the judgment. Reasons for judgment were issued on November 9, 1989, in which the court recognized a stipulation by the parties to share in each other's retirement benefits. The court also stated that legal interest was not appropriate.
On March 17, 1999, Carlin filed a request for declaratory judgment on the issue of her right to a portion of Wallace's deferred retirement savings funds (DROP). The trial court's reasons for judgment were signed on September 23, 1999 and filed into the court record on September 24, 1999. In its reasons, the court declared that the community did not exist while the husband was in the DROP program; therefore, the wife was not entitled to any of said benefits.
*1020 On April 24, 2000, the parties entered into a stipulation in open court that addressed the retirement benefits and the DROP program. On May 12, 2000, a judgment was rendered by the court. Wallace filed a motion for new trial on May 19, 2000, asserting that the May 12 judgment did not reflect the April 24 stipulations entered into the record by the parties. The court issued reasons for judgment that were signed on September 14, 2000, and filed into the court record on Sept. 15, 2000, in which the motion for new trial was denied, and the court made "clarifications."[3]
Thereafter, on October 25, 2000, the court rendered another judgment, sua sponte. Pursuant to court instruction in its reasons for judgment, the second judgment was signed by counsel for both parties; however, legal counsel for Wallace expressly objected in writing on the face of the judgment document to the form and content "in that same do not follow the Court's Reasons for Judgment dated September 14, 2000." On November 6, 2000, Wallace filed a separate pleading of objection to form and content of judgment.

REASONS FOR JUDGMENT AND STIPULATIONS
Although the trial court issued reasons for judgment in March 1999 relative to the request for declaratory judgment filed on behalf of Carlin, no judgment actually exists in the record prior to the confection of the stipulation by the parties. The provisions of La. C.C.P. art. 1911 state in relevant part: "Except as otherwise provided by law, every final judgment shall be signed by the judge." A subsequent provision, La. C.C.P. art. 1918, provides: "A final judgment shall be identified as such by appropriate language. When written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment." See also Overmier v. Traylor, 475 So.2d 1094 (La.1985); City of Kaplan v. Mayard, 616 So.2d 826, 827 (La.App. 3rd Cir.1993). Written reasons for judgment do not take the place of a final judgment. Thus, at the time of the parties' stipulations in open court on April 24, 2000, there existed no binding judgment on the request for declaratory judgment.
Thereafter, the parties' open court stipulations provided that Carlin would receive $56,000.00 from the DROP fund, as well as "any interest which accrues as to that amount from the 1st of April, ... 2000 ... until date of distribution." The funds were to be immediately placed into a separate account. The parties additionally agreed that Carlin would receive 36% of all monthly retirement benefits in Wallace's name from the East Baton Rouge Parish Retirement Program, including any interest on the portion that had been withheld (40% had been withheld). They waived any and all claims to any retirement benefits, "including any ARISA (phon.) qualified or social security benefits, in the other's name other than that specifically distributed in [the] order." The parties also reserved their rights relative to the reservations in the partial judgment.
Louisiana Civil Code article 3071 provides as follows:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent ....
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing *1021 its performance, although its substance may thereafter be written in a more convenient form. (underlining added)
The open court recitations, by which the parties agreed to the stipulations offered by their respective attorneys, constituted a binding compromise or agreement on the issues asserted by the motion for declaratory judgment and to the extent that the stipulations impacted other benefits.

MAY 12, 2000 JUDGMENT
On May 12, 2000, the trial court rendered a judgment.[4] The judgment partitioned Wallace's retirement benefits in the Employees Retirement System of East Baton Rouge, giving Carlin 36% of all benefits issued, as well as future benefits; it awarded Carlin $56,000.00 (plus any interest from April 1, 2000 until disbursement) from DROP; it released the parties from any and all other claims related to any retirement or ERISA account; and it reserved to the parties any surviving rights to social security benefits.
In asserting that the May 12 judgment did not reflect the parties' stipulations, Wallace specifically alleges on appeal that the judgment was flawed in the following respects: the vacation of the previous judgment; the recognition of Carlin as previous partial owner; the direct payment of 36% of monthly retirement benefit payments; the immediate payment to Carlin; vagueness as to interest and earnings accrued on Carlin's portion; vagueness as to claims to be released on other retirement plans; a reservation of social security benefits; and error as to the pronouncement that judgment was rendered on April 23.
With the exception of a partial judgment dated October 4, 1989, we have established that no judgment existed prior to the May 12 judgment; therefore, Wallace's assertion that the May 12 judgment erroneously vacates the previous judgment is correct. Our review also substantiates Wallace's claim that the trial court's pronouncement that judgment had been rendered on April 23 was fallacious. Neither of these technical clarifications are, however, relevant to the May 12 judgment's viability.
At the time of the stipulations, it was orally agreed between the parties that a judgment would be prepared in conformity with the stipulations. A comparison of the substance of the May 12 judgment to the April 24 open court stipulations reveals a formal reiteration via the judgment of court proceedings and of the provisions to which the parties had orally agreed in court via the stipulations, with one exception. The stipulations stated that "[b]oth parties waive any and all claims as to any retirement benefits including an ARISA (phon.) qualified or social security benefits, in the other's name other than that specifically distributed in this order." The May 12 judgment comparably provides a release by the parties of "claims that they may have as [to] any other retirement or ERESA [sic] qualified retirement account[;]" however, the May 12 judgment departed from the stipulations in its provision that the parties reserve "any claim *1022 they may have under federal law as to social security benefits in the other's name." This discrepancy violates the judicially enforceable stipulations, and constitutes error by the trial court.[5]
Accordingly, we reverse the portion of the May 12 judgment that reserves to the parties a claim of social security benefits in the other's name. In all other respects, Wallace's claim that the May 12 judgment did not accurately reflect the open court stipulations is unsustainable.

VALIDITY OF JUDGMENT DATED OCTOBER 25, 2000
Following the May 12 judgment, the court, sua sponte, rendered a second judgment dated October 25, 2000. Wallace objects to the October 25, 2000 judgment on the basis that it altered the substance of the May 12, 2000 judgment.
The May 12, 2000 judgment was a final judgment. A final judgment may not be amended to effect a substantive change. Hebert v. Hebert, 351 So.2d 1199, 1200 (La.1977). Louisiana Code of Civil Procedure article 1951 permits an amendment of a final judgment by the trial court on its own motion, or on motion of any party, for only two limited purposes: "(1) [t]o alter the phrase[o]logy of the judgment, but not the substance; or (2)[t]o correct errors of calculation." Substantive changes to a final judgment should be pursued via a motion for a new trial or an appeal. Starnes v. Asplundh Tree Expert Company, 94-1647 (La.App. 1 Cir. 10/6/95), 670 So.2d 1242, 1246. An amendment to a final judgment is not even allowed to conform to the trial court's written reasons for judgment. Hebert, 351 So.2d at 1200. The Louisiana Supreme Court has recognized a jurisprudential exception in that, on its own motion and with the consent of the parties, the trial court may substantively amend a judgment. Villaume v. Villaume, 363 So.2d 448, 451 (La.1978).
The following substantive provisions in the October 25 judgment are not contained in the May 12 judgment:
(1) the addition of a provision that Wallace shall receive the balance of any retirement benefit payments withheld or reserved after payment of Carlin's portion;
(2) the addition of a clause specifically releasing the parties from any retirement or ERISA qualified account claims that were received through the previous employment of Carlin with Albertson's and/or Albertson's Employee Corporate Pension Plan;
(3) the establishment of Carlin as owner of any and all interest accrued or attributable to the property received by her pursuant to the judgment; and
(4) the inclusion of a waiver by the parties of any and all claims to social security benefits in the other's name.
In the instant case, the October 25 judgment clearly exceeds the parameters described in La. C.C.P. art. 1951. Moreover, Wallace's express denial of consent as to the form and substance of the judgment excludes it from the jurisprudential exception carved out in Villaume. Thus, the *1023 amended judgment of October 25, 2000 is rendered an absolute nullity. Starnes, 670 So.2d at 1246. The May 12, 2000 judgment remains in effect.

DEFERRED RETIREMENT OPTION PLAN
In the final two assignments of error by Wallace, he objects to the trial court's award to Carlin of DROP benefits from the East Baton Rouge Retirement Plan. The stipulations by the parties on April 24, 2000, contained an express agreement that Carlin would receive $56,000.00 from the DROP program in a separate account, with any interest that accrued from April 1, 2000, until the date of distribution. The May 12, 2000 judgment likewise confirmed this stipulation in its declaration that Carlin was to receive $56,000.00, with interest, from the DROP program. Thus, the trial court's award of DROP benefits properly conforms to the parties' stipulations.

FRIVOLOUS APPEAL
The imposition of damages for a frivolous appeal is regulated by La. C.C.P. art. 2164. Such damages will not be awarded unless it is clear that the appeal was taken solely for the purpose of delay or that the appellant's counsel lacks seriousness in the position advocated. Fisk v. Mathews, 525 So.2d 223, 227 (La.App. 1st Cir.1988). Moreover, damages for frivolous appeals are penal in nature; therefore, they must be strictly construed. Kambur v. Kambur, 94-775 (La.App. 5 Cir. 3/1/95), 652 So.2d 99, 104. The mere fact that an argument does not have merit does not render an appeal frivolous. Michael v. Michael, 602 So.2d 1099, 1103 (La.App. 1st Cir.1992). In the instant case, the procedural maze that characterizes this case does not present a circumstance in which Wallace's appeal can be deemed to have been pursued solely for delay or in which his counsel was not resolute in the position asserted. Accordingly, the damages for frivolous appeal sought by Carlin are denied.

CONCLUSION
For the reasons expressed in this opinion, the trial court judgment of October 25, 2000 is vacated; the May 12, 2000 judgment is reversed, in part, to waive any claim that the parties may have under federal law as to social security benefits in the other's name; in all other respects, the May 12, 2000 judgment is affirmed. David M. Wallace is assessed 50% of costs associated with this appeal; Lena Wallace Torres Carlin is assessed 50% of the costs.
AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART.
NOTES
[1] Lena Wallace Torres was later referred to as Lena Wallace Torres Carlin.
[2] Carlin's proportionate interest was dependent on the formula enunciated in Sims v. Sims, 358 So.2d 919 (La.1978).
[3] On November 6, 2000, a court order was signed denying the motion for new trial.
[4] In the judgment, the court stated that the defendant failed to appear on April 23, 2000 at the hearing; however, the minutes do not reference a hearing on April 23 or the failure of the defendant to appear. Instead, the minutes and the record reflect a hearing on April 24, 2000, at which counsel for both parties were present, and stipulations were entered into the record. The judgment of May 12 indicated that it vacated the "previous judgement [sic] in this matter rendered on the 23rd of September, 1999[.]" Although there is no September 23, 1999 judgment in the record, the court appears to be erroneously referring to its reasons for judgment, in which the court states that it denies plaintiff's request for declaratory judgment.
[5] In all other respects the May 12 judgment paralleled the stipulation: (a) The May 12 judgment recognized the October 4, 1989 partial judgment that deemed Carlin a partial owner of the retirement benefits of Wallace; (b) Although there is no indication in the parties' stipulation regarding "direct" and "immediate" payment of all retirement benefits to Carlin in addition to the DROP benefits, as is provided in the May 12 judgment, the stipulation does refer to an escrowed account from which Carlin's 36% of Wallace's retirement benefits would be paid; (c) The stipulation and May 12 judgment provide that Carlin would receive accrued interest on her 36% portion of the retirement benefits that had been withheld.